UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BESPOKE LLC** | * | |
|     **Plaintiff** | * | **CASE NO.: 17-2080** |
| | * | |
| **v.** | * | |
| | * | **SECTION:** |
| **GARTH PIESSE** | * | |
|     **Defendant** | * | |
| | * | **DEMAND FOR JURY** |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

## COMPLAINT

Plaintiff, Bespoke LLC ("Bespoke"), complains and alleges as follows:

### JURISDICTION AND VENUE

1.

This is a suit under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). That statute is part of the "Lanham Act."

2.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

3.

This Court has personal jurisdiction over Defendant. Defendant reached out through his agent and personally to Plaintiff within this judicial district in committing actions herein described, including, but not necessarily limited to, contacting Plaintiff within this District to attempt to sell to Plaintiff the domain name at issue, Bespoke.com. Thus the cause of action stated herein arises out of or relates to Defendant's activities in this forum. Accordingly, specific personal jurisdiction is proper. Additionally and alternatively, upon information and belief, Defendant is a serial "cybersquatter" whose pattern of such conduct in regard to this domain name and other domain names includes sufficient contacts with this forum to establish general personal jurisdiction.

4.

Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2) or 28 U.S.C. § 1391(b)(2) or 28 U.S.C. § 1391(c)(3).

## PARTIES

5.

Plaintiff, Bespoke LLC ("Bespoke"), is a limited liability company organized and existing under the laws of Louisiana.

6.

Defendant, Garth Piesse ("Piesse"), is an individual believed to be of the age of majority and a resident of New Zealand, whose address is P.O. Box 181, Palmerston North, Manawatu, 4440, NZ.

## FACTS

7.

Plaintiff Bespoke was formed on January 28, 2013. Plaintiff markets, arranges, and sells custom travel tours in New Orleans and other locations. Immediately upon its formation, Plaintiff began using the marks BESPOKE and BESPOKE EXPERIENCES for the marketing, identification, and sales of its services.

8.

BESPOKE has been in use by Plaintiff as a service mark since at least as early as January 28, 2013. BESPOKE is registered to Plaintiff as a standard character mark on the principal United States Patent and Trademark Office Registry (Reg. No. 4,850,277) and the registration indicates use by Plaintiff since at least as early as January 28, 2013.

9.

BESPOKE EXPERIENCES has been in use by Plaintiff as a service mark since at least as early as January 28, 2013. BESPOKE EXPERIENCES is registered to Plaintiff as a standard character mark on the principal United States Patent and Trademark Office Registry (Reg. No. 4,846,050) and the registration indicates use by Plaintiff since at least as early as January 28, 2013.

10.

Upon information and belief, and as can be seen through an online search of his name, Defendant Garth Piesse has an extensive history of purchasing internet domain names and "squatting" upon them while he attempts to sell such domain names to others whose trademark, service mark, or name is either the same or confusingly similar to a domain name Piesse has purchased.

11.

The domain name system, or DNS, is a system designed to make the Internet accessible to human beings. The main way computers that make up the Internet find one another is through a series of numbers, with each number (called an "IP address") correlating to a different device. However it is difficult for the human mind to remember long lists of numbers so the DNS uses letters rather than numbers, and then links a precise series of letters with a precise series of numbers.

12.

A domain name itself comprises two basic elements: before and after "the dot." A part to the right of the dot such as "com," "net," or "org" is known as a "top-level domain" or TLD. A company called a registry is in charge of specific domains ending with a particular TLD, as well as the IP addresses with which those names are associated. The part before the dot is the domain

name that is registered and which is then used to provide online systems such as websites, email and so on. These domains are sold by various retail registries, such as Go-Daddy or, in this instance Uniregistrar Corp. or Uniregistry, to retail customers for a period of time or a term.

13.

The Internet Corporation for Assigned Names and Numbers ("ICANN") was created in 1998 to assume responsibility for ensuring the Internet's stable and secure operation. ICANN contracts with each registry and runs an accreditation system for registrars. By these contracts ICANN provides an addressing system so that no two domain names and no two IP addresses are the same or registered or sold to different customers by registries. ICANN thus coordinates how IP addresses are supplied to avoid repetition or clashes. ICANN is also the central repository for IP addresses, from which ranges are supplied to regional registries who in turn distribute them to network providers and retail registry companies.

14.

In its role as coordinator of domain names, ICANN maintains a central registry of assigned names that can be accessed by a "Whois" search. Such a search for the domain name Bespoke.com through ICANN Whois indicates that GARTH PIESSE, PO BOX 181, PALMERSTON NORTH MANAWATU 4440 NZ, Phone: +64.226005402, Email: GPIESSE@GMAIL.COM, is the registrant (owner) of the domain name. ICANN shows a Created Date of 2014-05-09, an Updated Date of 2016-08-14, and a Registration Expiration Date of 2026-05-09. The "raw" Whois record is as follows:

> Domain Name: BESPOKE.COM
> Registry Domain ID: 1858046764_DOMAIN_COM-VRSN
> Registrar WHOIS Server: whois.uniregistrar.net
> Registrar URL: http://uniregistry.com
> Updated Date: 2016-08-14-T04:34:44Z
> Creation Date: 2014-05-09-T18:38:21Z

Registrar Registration Expiration Date: 2026-05-09-T18:38:21Z
Registrar: UNIREGISTRAR CORP
Registrar IANA ID: 1659
Registrar Abuse Contact Email: abuse@uniregistry.com
Registrar Abuse Contact Phone: +1.9494785380
Domain Status: clientRenewProhibited
Domain Status: clientDeleteProhibited http://www.icann.org/epp#clientDeleteProhibited
Domain Status: clientTransferProhibited
http://www.icann.org/epp#clientTransferProhibited
Registry Registrant ID:
Registrant Name: GARTH PIESSE
Registrant Organization:
Registrant Street: PO BOX 181
Registrant City: PALMERSTON NORTH
Registrant State/Province: MANAWATU
Registrant Postal Code: 4440
Registrant Country: NZ
Registrant Phone: +64.226005402
Registrant Phone Ext:
Registrant Fax:
Registrant Fax Ext:
Registrant Email: GPIESSE@GMAIL.COM
Registry Admin ID:
Admin Name: GARTH PIESSE
Admin Organization:
Admin Street: PO BOX 181
Admin City: PALMERSTON NORTH
Admin State/Province: MANAWATU
Admin Postal Code: 4440
Admin Country: NZ
Admin Phone: +64.226005402
Admin Phone Ext:
Admin Fax:
Admin Fax Ext:
Admin Email: GPIESSE@GMAIL.COM
Registry Tech ID:
Tech Name: GARTH PIESSE
Tech Organization:
Tech Street: PO BOX 181
Tech City: PALMERSTON NORTH
Tech State/Province: MANAWATU
Tech Postal Code: 4440
Tech Country: NZ
Tech Phone: +64.226005402
Tech Phone Ext:
Tech Fax:

> Tech Fax Ext:
> Tech Email: GPIESSE@GMAIL.COM
> Name Server: ns1.uniregistrymarket.link
> Name Server: ns2.uniregistrymarket.link
> DNSSEC: unsigned
> URL of the ICANN WHOIS Data Problem Reporting System: http://wdprs.internic.net/

Thus, Defendant purchased or registered the domain name Bespoke on May 9, 2014, and that registration was updated or re-registered on August 14, 2016.

15.

There is no active website for bespoke.com. There does not appear ever to have been one. Indeed, the only thing to be found by searching online for bespoke.com is a statement by Uniregistry that the domain name may be available for purchase.

16.

The only thing that Defendant Piesse has done with the domain name is to attempt to sell it for a wildly inflated price. For example, after earlier emails from Piesse's agent and from Piesse himself, on November 22, 2016, Plaintiff, through its member Travis Simpson, received the following email at its office in New Orleans:

From: "Uniregistry.com" <market@uniregistry.com>
Date: Nov 22, 2016 3:08 PM
Subject: bespoke.com Inquiry
To: "Travis Simpson" <travissi2000@gmail.com>
Cc:

Hello Travis,

My name is Stephanie, and I am a Broker with Uniregistry.com. I represent the current owner of bespoke.com.

I was able to speak with the seller and based on many criteria they have determined a value of 8,500,000.00 USD.

If you have any questions, please let me know.

Review & Respond Online

Stephanie B. Gillies
Sales Associate
Office: +1 949 416 2555  ext: 6282
Direct: +1 345 325 0562
Skype: Stephanieuniregistry1

Any communication is confidential. Prices are valid for seven days, and are in United States Dollars.

   Sent using the Uniregistry Market platform.
   We make buying domain names easy
   (Formerly DomainNameSales.com)

   [txjcoDd7boT]


17.

Upon information and belief, Defendant routinely and regularly engages in similar activities and ploys.  http://whois.domaintools.com/piesse.com indicates Piesse is associated with about 39,330 domain names.

**THE ACPA**

18.

In enacting the Anticybersquatting Consumer Protection Act of 1999 ("ACPA"), 15 U.S.C. § 1125(d), Congress recognized and condemned the growing practice in which a "Cybersquatter," often through the use of a computer program that buys up a name as soon as it becomes available, buys multiple domain names (typically for a retail price well under $100 each) and then holds the names hostage, and attempts to re-sell them (often, as here, with the assistance of a broker) at an inflated price to a company or individual with a legitimate interest in or use for the domain name. See S. Rep. No. 106-140.  Such "Cybersquatters" do not use the domain name in connection with a "real" (if indeed any) website or other enterprise, but simply "squat" on a domain name for its

term after retail purchase (in this case until May 9, 2026) to attempt to profit by extracting a higher price from someone whose trademark, service mark, or name is readily associated with the domain name. And often, as indeed appears to be the case here, the "Cybersquatter" uses the same computer program to renew or to extend his or her control over the "hostage" domain name when a term expires.

19.

The ACPA provides in part:

> A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—
>
> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
> (ii) registers, traffics in, or uses a domain name that—
> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
> (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
> (III) is a trademark, word, or name protected by reason of section 706 of title 18, United States Code, or section 220506 of title 36, United States Code.

15 U.S.C. § 1125(d)(1)(A).

20.

Plaintiff had common law rights as owner and user of the marks BESPOKE and BESPOKE EXPERIENCES prior to Defendant's ("A person" or "that person" as described in the statute) purchase and registration of the domain name Bespoke.com. Additionally and alternatively, Plaintiff was the registered owner of said marks with the USPTO prior to Defendant's re-registration of the domain name Bespoke.com. Defendant registered or trafficked in a domain name that was (and is) identical to Plaintiff's service mark in the case of BESPOKE and

confusingly similar in the case of BESPOKE EXPERIENCES, thus meeting the requirement of Section 1125(d)(1)(A)(ii).

21.

As to the requisite showing of bad faith under Section 1125(d)(1)(A)(i), the ACPA provides:

> In determining whether a person has a bad faith intent described under subparagraph (A), a court may consider factors such as, but not limited to—
> (I)  the trademark or other intellectual property rights of the person, if any, in the domain name;
> (II)  the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
> (III)  the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
> (IV)  the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
> (V)  the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
> (VI)  the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
> (VII)  the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
> (VIII)  the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
> (IX)  the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

15 U.S.C. § 1125(d)(1)(B)(i).

22.

Under the non-exclusive statutory indicia of bad faith, Plaintiff respectfully submits that at least five of the listed factors establish bad faith by Defendant: (1) Defendant has no trademark or intellectual property rights in the domain name; (2) Defendant has no prior use of the domain name in connection with the bona fide offering of goods or services; (3) Defendant makes no bona fide commercial or fair use of Plaintiff's mark in a site accessible under the domain name (indeed, there is no active site for the domain name); (4) Defendant has offered "to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services," and Defendant has engaged in "prior conduct indicating a pattern of such conduct"; and (5) Defendant has registered or acquired "multiple domain names" in carrying out his activities.

23.

Under the ACPA:

> In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark.

15 U.S.C. § 1125(d)(1)(C). Plaintiff as the owner of the marks BESPOKE and BESPOKE EXPERIENCES seeks transfer to Plaintiff of the domain name Bespoke.com.

24.

The ACPA allows the Plaintiff to seek statutory damages of not less than $1,000 nor more than $100,000 to be awarded in the court's discretion. 15 U.S.C. § 1117(d); see also Kiva Kitchen & Bath, Inc. v. Capital Distrib., Inc., 319 Fed. Appx. 316 (5th Cir. 2009). Plaintiff respectfully submits that, under the circumstances of this case, including but not necessarily limited to Defendant regularly engaging in proscribed conduct and seeking to sell to Plaintiff the domain

name that Defendant is holding for a ransom of $8,500,000.00, the maximum statutory damages should be awarded.

25.

Plaintiff also seeks recovery of its attorney fees under 15 U.S.C. § 1117(a) and any other bases available.

## DEMAND FOR JURY TRIAL

26.

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

A. For entry of an order transferring the domain name Bespoke.com from Defendant to Plaintiff;

B. For statutory damages of not less than $1,000.00 nor more than $100,000.00;

C. For Plaintiff's costs and attorney fees; and

D. For such other and further relief as the Court deems proper.

Respectfully submitted,

*s/Patrick H. Patrick*
Patrick H. Patrick #14297 (T.A.)
Pierre V. Miller II #17712
Patrick Miller, LLC
400 Poydras Street, Suite 1680
New Orleans, Louisiana 70130
Telephone:    (504) 527-5400
Facsimile:    (504) 527-5456
E-mail: ppatrick@patrickmillerlaw.com
E-mail: pmiller@patrickmillerlaw.com

SERVICE INSTRUCTIONS:

New Zealand is not a signatory to the Hague Convention on service of process. Please serve Defendant pursuant to Federal Rule of Civil Procedure 4(f)(2)(C)(ii), which authorizes service upon a foreign defendant by "using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt."

Defendant's address is:

GARTH PIESSE
PO BOX 181
PALMERSTON NORTH
MANAWATU 4440 NZ